UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 19-cv-81620-SINGHAL

RITA FOX,

    Plaintiff,

v.

DANA JAMES GAINES, individually, and
LUCILLE F. GAINES, individually,

    Defendants.
_____/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court on Defendants' motions to dismiss (DE [40], [41]). The Court has reviewed the motions and Plaintiff's responses in opposition (DE [42], [43]). No replies were filed. The matter is ripe for review. For the following reasons, Fox cannot state a claim and the motions to dismiss are **GRANTED**.

**I.   BACKGROUND**

Plaintiff Rita Fox brings three counts against Defendant Lucille Gaines ("Lucille") and Defendant Dana Gaines ("Dana") (collectively, "Defendants") under the Fair Housing Act, *see* 42 U.S.C. §§ 3601–3631, and three counts under Florida's Fair Housing Act, *see* Fla. Stat. §§ 760.20–.37. Lucille is the owner of the residential apartment complex where Fox lived; Dana is on-site property manager. *See* Second Am. Compl. ("SAC") ¶¶ 5, 7 (DE [39]). Fox alleges Defendants engaged in "pervasive and persistent sexual harassment and discrimination, which created an intolerable living condition" for her and her minor child. The crux of Fox's claims involves salacious allegations of a quid pro quo

sexual relationship, where she engaged in sex with Dana in exchange for paying only partial rent.  *Id.* ¶ 19.

On August 29, 2014, Fox signed a one-year lease agreement for $800 per month. *Id.* ¶¶ 29, 38.  She made her initial payment of first month, last month, and security deposit, equaling $2400.  *Id.* § 32.  At some point unclear from the allegations in the SAC, Fox began having difficulty making the monthly payments.  *See id.* ¶¶ 33–35.  "Sometime later," Dana offered to reduce Fox's rent in exchange for sexual favors.  *Id.* ¶ 34–35. "[F]our years of sexual encounters ensued."  *Id.* ¶ 35.  Dana's communications with Fox became more graphic, and he apparently started exhibiting jealousy when Fox had other men at her apartment.  *Id.* ¶ 40–43.  Among other allegations, Dana installed security cameras and placed them directly in the direction of Fox's front door.  *Id.*  On March 30, 2018, Fox ended the relationship.  *Id.* ¶¶ 40–43.

In response to Fox ending the sexual relationship, their landlord-tenant relationship deteriorated rapidly.  Dana served Fox with fraudulent violation notices and attached a three-day notice-to-vacate to her door.  *Id.* ¶¶ 44–45.  Among other things, he then posted multiple notices of eviction and instructed her to leave the premises of the apartment complex immediately—even calling the police at one point to have her arrested for "trespassing."  *Id.* ¶¶ 56, 57.  Fox now brings this action against both Dana and Lucille.

## II.     LEGAL STANDARD ON A MOTION TO DISMISS

"'When evaluating a motion to dismiss under Rule 12(b)(6), the question is whether the complaint contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Worthy v. City of Phenix City*, 930 F.3d 1206, 1217 (11th Cir. 2019) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); s*ee*

*also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Worthy*, 930 F.3d at 1217. The Court is guided by the well-known principle that, on a motion to dismiss for failure to state a claim, the Court assumes all well-pled allegations in the Complaint are true and views them in the light most favorable to the plaintiff. *Jackson v. Okaloosa Cty.*, 21 F.3d 1531, 1534 (11th Cir. 1994).

### III. DISCUSSION

#### A. Fox's Claims Against Defendants

The SAC asserts six claims against Defendants; the first three arise under the Fair Housing Act ("FHA"). In Count I, Fox brings a claim for a violation of § 3617, or a so-called "interference claim"; in Count II, a violation of § 3604(b); and in Count III, a violation of § 3604(c). The latter three counts arise under Florida's version of the FHA ("Florida's FHA"). In Count IV, she brings a claim for a violation of section 760.37, Florida Statutes, Florida's parallel version of an "interference claim"; in Count V, a violation of section 760.23(2), Florida Statutes, Florida's parallel version of § 3604(b); and in Count VI, a violation of section 760.23(3), Florida Statutes, Florida's parallel version of § 3604(c). The FHA and Florida's FHA "are substantively identical, and therefore the same legal analysis applies to each." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014). Thus, the Court will analyze Fox's FHA claims (Counts I–III), and that analysis will apply equally to her claims under Florida's FHA (Counts IV–VI).

3

### B.      Adequacy of Fox's Factual Allegations

Fox's interference claim alleges Defendant interfered with her protected rights under the FHA by terminating her lease as retaliation for her ending the sexual relationship with Dana. To state a claim for interference under the FHA, a plaintiff "must plead factual matter that, if true, demonstrates [a] [d]efendant interfered with her rights under the Fair Housing Act." *Noah v. Assor*, 379 F. Supp. 3d 1284, 1289 (S.D. Fla. 2019). It is generally accepted that § 3617 "extends only to discriminatory conduct that is so severe or pervasive that it will have the effect of causing a protected person to abandon the exercise of his or her housing rights." *Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F. Supp. 2d 1133, 1144 (S.D. Fla. 2004).

Dana argues Fox has not pled sufficient allegations to reach the *elevated* level of harassment required in the Eleventh Circuit. That is to say, he argues Fox's complaint does not allege *pervasive* sexual harassment, or, more specifically, "a *pattern* of harassment." He relies primarily on two out-of-circuit cases, insisting that the proper inquiry "is not a simple numbers game with a necessary minimum number of incidents," and that the Court must use a "sliding scale, accounting for both the severity of each incident as well as the frequency." *See Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 862 (7th Cir. 2018); *Bloch v. Frischholz*, 587 F.3d 771, 776 (7th Cir. 2009) (requiring "more than a quarrel among neighbors or an isolated act of discrimination").

The Court disagrees. As a factual matter, Fox's allegations are pled well beyond what is required to withstand a motion to dismiss. She has sufficiently pled that once she ended the sexual relationship, Defendants started serving her with fraudulent notices for non-payment of rent and threats of eviction, among other things, ultimately, terminating

4

her lease. The Court cannot imagine what more she would need to plead to withstand a motion to dismiss.

### C.   "Retaliation" as a Claim for "Sexual Discrimination"

What remains for the Court to determine, however, is whether this type of interference—retaliation for ending sexual relations—is actionable under the FHA. While the Court agrees that Fox has sufficiently pled "severe, pervasive harassment," this does not resolve the issue of whether this type of behavior—retaliation for ending sexual relations—is actionable, as a matter of law, under the FHA.

Under § 3617, it is "unlawful to . . . interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." The way the Court understands this provision, to plead an interference claim, a plaintiff must first identify a predicate right protected by the FHA (whether it be under 3603, 3604, 3605, or 3606), and then plead sufficient allegations that give rise to actual interference with that predicate right. Here, Fox identifies two predicate rights protected under the FHA: § 3604(b) and § 3604(c). These two rights also form the basis of Counts II and III.

Section 3604(b) makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin. Further, § 3604(c) makes it unlawful, in relevant part, to "make, print, or publish . . . any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color,

5

religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination."

The plain language of neither § 3604(b) nor § 3604(c) identifies Dana's behavior as prohibited. Retaliation for ending sexual relations is most certainly not a "race, color, religion, sex, familial status, or national origin." The FHA does not define the term "sex." *See* 42 U.S.C. § 3602. Yet, even under our society's expanding understanding of the term "sex," *see Bostock v. Clayton Cty.*, 2020 WL 3146686 (U.S. June 15, 2020) (holding Title VII of the Civil Rights Act covers sexual orientation and gender identity despite the statute's plain language including only "sex"), there is no reasonable, discernable way of understanding it as including retaliation for ending a physical, sexual relationship. Whether it be our traditional understanding (male or female), sexual orientation, or sexual identity, the allegations that Dana retaliated against Fox because she no longer wanted to engage in a sexual relationship is not an allegation of discrimination "on the basis of sex." There are no allegations anywhere in the SAC that Dana's retaliation against Fox was *because* she is a female, or *because* of her sexual orientation, or *because* of her sexual identity. The allegations are clear: He retaliated because she ended the sexual relationship with him. This, the FHA does not cover. It does not cover it per the plain language of its text; nor does it cover it under any reasonable understanding of society's definition of the term "sex."

The Court appreciates this ruling is in direct contrast with *Noah*, a case decided by this district not too long ago. *See Noah*, 379 F. Supp. 3d at 1288. The Court further appreciates this ruling is in direct contrast with, what *Noah* said is, "the overwhelming weight of federal authority." *Id.* (citing sixteen circuit and district court decisions

6

supporting this conclusion). But, as *Noah* points out, "the Eleventh Circuit has not expressly decided the issue." *Id.* In fact, in *Tagliaferri v. Winter Park Housing Authority*, 486 F. App'x 771, 774 (11th Cir. 2012), the court expressly passed on deciding the issue. Without binding case law, the Court is not at liberty to rewrite the FHA to fit a case, no matter how sympathetic a litigant might be.

*Noah*, of course, is not binding on this Court. *See Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1320–21 (S.D. Fla. 2020) (recognizing fellow district courts of equal rank represent persuasive authority, not binding). While this Court understands the well-written opinion, it represents a departure from the plain meaning of the text in the FHA. It is this Court's duty to fully and faithfully apply the law of the land, as written by Congress through the bicameral legislative process, and decided by higher courts. In that regard, arriving at noble policy making decisions through judicial opinion violates the separation of powers. Congress ought to know when it is time to revisit a law because its' plain meaning does not cover situations the people may think it should. For this reason, this Court must carefully apply the law as written and allow Congress to do the job demanded by the will of the people.

*Noah* relies primarily on a regulation promulgated by the U.S. Department of Housing & Urban Development ("HUD"). *See* 24 C.F.R. § 100.600(a)(1) (defining "quid pro quo" as "unwelcome conduct that is sufficiently severe or pervasive as to interfere with: [t]he availability, sale, rental, or use or enjoyment of a dwelling; [or] the terms, conditions, or privileges of the sale or rental"). But this regulation, issued pursuant to HUD's rule-making authority in 42 U.S.C. § 3535(d), is "binding on all *federally subsidized housing authorities*." *King v. Hous. Auth. of City of Huntsville*, 670 F.2d 952, 954 (11th

Cir. 1982) (emphasis added). Indeed, in passing the FHA, Congress granted the Secretary of HUD the authority to "make such rules and regulations as may be necessary to carry out *his* functions, powers, and duties." 42 U.S.C. § 3535(d). In other words, 24 C.F.R. § 100.600(a)(1) is a HUD regulation announced by HUD to effectuate its functions, powers, and duties, and binding on executive entities in carrying out their administrative processes—not a court of law.

And the cases *Noah* relied on do not compel this Court to change its ruling. Indeed, they do not persuade this Court, either. Just one of many examples is *West v. DJ Mortgage, LLC*, 164 F. Supp. 3d 1393, 1398 (N.D. Ga. 2016). In *West*, the district court denied a motion to dismiss based on its ruling that § 3617 prohibits "sexual discrimination" in connection with the sale or rental of a dwelling. However, the court then curiously changed its language from "sexual discrimination" to "sexual harassment," and, like *Noah*, cited to *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999). Expressly citing to *Mendoza*, *West* then draws the following conclusion: "Sexual harassment qualifies as sexual discrimination under the FHA if that harassment alters the terms or conditions of the rental of the property for the tenant." 164 F. Supp. 3d at 1398. This Court respectfully disagrees with this analysis and conclusion. First, the *Mendoza* opinion makes no mention of the FHA whatsoever; the case is based entirely on Title VII of the Civil Rights Act and the Americans with Disabilities Act. *See generally Mendoza*, 195 F.3d at 1245. Second, §3604(b) uses the term "discriminate"; nowhere does it use the term "harassment." *See United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) ("[W]e must presume that Congress said what it meant and meant what it said."); *see also Iselin*

*v. United States*, 270 U.S. 245, 251 (1926) (reasoning that adding words to statutes "transcends the judicial function").

Per the plain language of the FHA—the law this Court is bound to apply to cases and controversies—Fox must plead allegations that plausibly state a claim of discrimination or interference with her housing rights *on the basis of sex*. The allegations in the SAC undoubtedly paint a dark picture of an on-site manager making living arrangements difficult for a tenant who no longer wanted to engage in sexual relations. It is patently obvious that this arrangement was highly questionable from the very beginning. Fox alleges Dana set different conditions and provisions of service concerning her late payments and failure to make full payments as long as she was willing to engage in sexual relations with him. Once she ended this agreement, Dana changed the terms and threatened to take multiple actions, including eviction. But reading Fox's allegations as liberally as possible, she has not—and she cannot—allege that Dana's behavior constituted discrimination against her *on the basis of sex*. Therefore, Fox's claims under the FHA (and Florida's FHA) must be dismissed.

### D. Lucille's Vicarious Liability

In Lucille's motion to dismiss (DE [41]), she also argues that the only allegations in the SAC giving rise to a cause of action are against Dana. Thus, because she contends there are no allegations in the SAC to support imposing liability on her, the only theory to hold her liable in this case would be through vicarious liability, as the owner of the apartment complex. The Court has considered the argument, but need not reach this conclusion because Fox cannot state a claim.

## IV. CONCLUSION

For the foregoing reasons, the motions to dismiss (DE [40], [41]) are **GRANTED**. Because retaliation for ending a sexual relation is not covered under the FHA, Fox cannot state a claim and dismissal must be with prejudice. The Clerk of Court is directed to **CLOSE** this case and **DENY** any pending motions as moot.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 19th day of June 2020.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies to counsel via CM/ECF