UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 19-81620-CIV-SINGHAL/MATTHEWMAN

RITA FOX,

    Plaintiff,

v.

LUCILLE F. GAINES and
DANA JAMES GAINES,

    Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Rita Fox ("Ms. Fox" or "Plaintiff"), pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, hereby responds in opposition to Defendants Lucille F. Gaines ("Lucille Gaines") and Dana James Gaines's ("Dana Gaines") (collectively, "Defendants") Motion for Summary Judgment [ECF No. 93] ("Motion") and states as follows:

**PRELIMINARY STATEMENT**

Summary Judgment in this Fair Housing Act ("FHA") discrimination, retaliation and interference case is not appropriate when the undisputed evidence of a short temporal connection between a tenant's termination of a harassing sexual relationship with a property manager and the serving of the eviction notice overcomes the purported non-discriminatory basis for eviction. The swiftness of onsite property manager Dana Gaines's service of a bogus violation notice on Ms. Fox just days after she terminated their manager-tenant sexual relationship and a bogus eviction notice just days after Ms. Fox sought Dana Gaines's wife's help to stop Dana Gaines's further sexual advances, raises sufficient factual dispute (if not conclusive proof) of the pretext of

Defendants' purported basis for eviction and warrants denial of the Motion. Although not required under the mixed motive "motivating factor" test applied to FHA claims, Ms. Fox can also present evidence in the record to cast significant doubt on the alleged non-discriminatory reasons for the eviction, thus showing those reasons to be mere pretext for the discriminatory acts of Defendants.

In sum, Dana Gaines, an agent of property owner Lucille Gaines, discriminated against Ms. Fox under the FHA because she was a woman who ended their occasional sexual relationship (that she entered into in order to keep her rental apartment). Moreover, Dana Gaines retaliated against Ms. Fox for asserting her rights under the FHA to be free from his sexual advances, and he interfered with her FHA rights to enjoy her status as a rent-paying tenant because of her status as a woman with whom he had engaged in a coercive sexual relationship.

Following this Court's Post-Remand Order [ECF No. 65], Ms. Fox's remaining claims in her Second Amended Complaint [ECF No. 39] ("SAC") are for sexual harassment (both quid pro quo and hostile environment), retaliation and interference with FHA rights in violation of the Fair Housing Act, 42 U.S.C. § 3617 and 42 U.S.C. § 3604(b), and the Florida Fair Housing Act, F.S. § 760.37, based upon a violation of § 760.23(2). All of these claims should be decided by a jury, given the disputed factual issues for each claim.

**FACTUAL BACKGROUND**

In laying out the alleged undisputed facts, Defendants' Motion fails to follow proper procedure. Instead of citing to their six page Statement of Material Facts, filed at ECF No. 96 ("SMF"), Defendants' Motion devotes pages three through nine to restate facts without any reference to their SMF. Plaintiff asserts it is prejudicial for Defendants to include an additional seven pages of alleged facts in its Motion without reference to its six page SMF. The Court should disregard those seven pages of the Motion. Plaintiff, by contrast, has followed the Local Rules

#156639236_v1

and this Court's procedure explained in its Order Setting Trial [ECF No. 74] and set forth its Response Statement of Material Facts ("RSMF"), filed simultaneously with this Response, which will be cited in this Motion.

Ms. Fox rented an apartment at the Rose Bush Apartment complex starting in August 2014. RSMF, ¶ 1. After one year, she became a month-to-month tenant. *Id.* Defendant Dana Gaines was the property manager of the Rose Bush Apartments during the relevant time period and his mother, Defendant Lucille Gaines, was the owner. RSMF, ¶ 2. From November 2014 until March 30, 2018, Ms. Fox and Dana Gaines engaged in an occasional sexual relationship that was not consensual at all times, because Ms. Fox, who was scared and worried that she would be evicted, was pressured to acquiesce to Dana Gaines's requests for sex. RSMF, ¶¶ 3, 35, 36. Ms. Fox rented the apartment and stayed in the apartment despite Dana Gaines' sexual advances because she was a single mother facing financial difficulty and needed an affordable place to rent for her child and her to live safely. RSMF, ¶ 36. Dana Gaines knew of this power imbalance and pursued the sexual relationship anyway. RSMF, ¶6. Ms. Fox was continually concerned and worried that she couldn't end the relationship without risking eviction. RSMF, ¶¶ 21, 22. This fear proved justified because Ms. Fox was evicted by Dana Gaines within a month after she ended the relationship.

Throughout her tenancy at the Rose Bush complex, Ms. Fox was allowed to pay less than her full rent amount of $800 per month (rent amount for 2014 through end of 2017) because Dana Gaines offered this benefit of lower rent in return for sex. RSMF, ¶¶ 14, 17. In addition, Ms. Fox was allowed to pay the rent anywhere from 7 to 14 days late on a regular basis, and other tenants were similarly permitted to pay rent late without facing immediate eviction. RSMF, ¶¶ 13, 15. This course of conduct between the parties continued into 2018, when the rent was raised to $944 per month. *Id.*

After enduring Dana Gaines's sexual advances for several years, Ms. Fox eventually had enough and ended the relationship on Friday March 30, 2018. RSMF, ¶¶ 8-10. Within two business days following the breakup, on Tuesday, April 3, 2018, for the first time in almost four years of living at the Rose Bush complex, Dana Gaines posts a bogus "Notice of Violation" on Ms. Fox's front door alleging that certain personal items were blocking a sidewalk and were too far from her back porch. RSMF, ¶¶ 11, 37. No such violation had actually occurred. *Id.* Still intending to stay in her apartment after ending the relationship with property manager Dana Gaines, on April 6, 2018, Ms. Fox paid $500 toward her rent (the amount she had been allowed to pay while enduring Dana Gaines's sexual interactions), and promised to pay the remaining soon thereafter, as she had been doing for at least a year. RSMF, ¶¶ 12-13, 15, 18. Ms. Fox paid the remainder of the full rent for April on April 14, 2018. RSMF, ¶ 16.

At the same time, Dana Gaines had continued his harassment, retaliation and interference campaign by posting an informal, harassing note on Ms. Fox's door on April 14, 2018 regarding rent that Dana Gaines knew was forthcoming by prior agreement. RSMF, ¶ 19. This note prompted Rita Fox to complain to Jackie Gaines, Dana Gaines's wife, and to get Jackie's help to stop Dana Gaines from posting bogus notices and harassing her. RSMF, ¶ 20. Rather than Jackie helping Ms. Fox, Dana Gaines continued his harassment, retaliation and interference by again posting a bogus three day notice for non-payment of rent on Ms. Fox's door on April 22, 2018, which demanded Rita pay rent owed or vacate the property, despite the rent being paid in full (this notice even stated that zero rent was due). RSMF, ¶¶ 23, 38.

The harassment, retaliation and interference culminated in an invalid eviction complaint filed on May 1, 2018, which falsely stated that Ms. Fox had failed to pay her rent because it both

4

left blank the amount of rent owed and left in language stating that tenant had refused to pay the rent owed. RSMF, ¶ 39.

Based upon this factual record, replete with evidence of gender discrimination, retaliation for the exercise of rights as a tenant, and interference by Defendants of Ms. Fox's rights as a tenant under the FHA, along with the arguments below, this Court should not grant summary judgment, but allow all of the claims to proceed to trial.

## ARGUMENT

**I.   SUMMARY JUDGMENT STANDARD**

There is no dispute that under the governing summary judgment standard as cited by Defendants, that the Court "should consider all of the evidence in the light most favorable to the nonmoving party, with all reasonable inferences drawn in favor of that party." Motion at 2, citing *Dibrell Bros. Intern. S.A., v. Banca Nazionale Del Lavoro*, 38 F.3d 1571, 1578 (11th Cir. 1994). Here, Plaintiff can show "sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in [her] favor." *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 249 (1986).

**II.  FEDERAL FAIR HOUSING ACT and FLORIDA FAIR HOUSING ACT[1]**

At the outset, the Court must decide the appropriate causation standard to apply to a summary judgment motion to determine whether there is sufficient evidence for a reasonable jury to return a verdict in Ms. Fox's favor. Because the FHA has long been interpreted as a remedial statute enacted by Congress, the Court need only decide whether Ms. Fox has created a sufficient disputed issue as to whether her gender "played some role in the actions of" Defendants under 42 U.S.C. §§ 3617 and 3694(b), and not require a showing of a "but for" causation. *Sofarelli v.*

---

[1] *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014) ("The FHA and the Florida [FHA] are substantively identical, and therefore the same legal analysis applies to each.").

*Pinellas County*, 931 F.2d 718, 722 (11th Cir. 1991). Importantly, in its opinion that reinstated the claims in the SAC, the United States Court of Appeals for the Eleventh Circuit reiterated that when interpreting the FHA, courts are to look to cases interpreting Title VII, which uses language virtually identical to the FHA. *Fox v. Gaines*, 4 F.4th 1293, 1296 (11th Cir. 2021).[2] Thus, the mixed motive test now applied to Title VII claims when a defendant argues that it had some non-discriminatory reason for the gender based adverse action, should apply here.

### A. <u>Motivating Factor Standard Should Apply to Deny Summary Judgment</u>

In a mixed motive analysis, a plaintiff "can succeed on a mixed-motive claim by showing that illegal bias, such as bias based on sex or gender, was a motivating factor for an adverse employment action, even though other factors also motivated the action." *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (adopting motivating factor analysis in a mixed-motive discrimination claim) (internal quotation omitted); *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1364 (11th Cir. 2018) (reversing lower court's grant of summary judgment to the defendant where the plaintiff offered evidence from which a jury could find plaintiff's sex "was *a* motivating factor" for the pay disparity between her and her male predecessor) (emphasis in original); *Beyer v. Miami-Dade Cty.*, No. 11-24285-CIV, 2019 WL 9512986, at *24 (S.D. Fla. Feb. 12, 2019) ("A plaintiff can prevail on a Title VII disparate-treatment claim by demonstrating that her sex was 'a motivating factor' for a particular adverse employment decision, even if the employer was also motivated by other, even legitimate, factors.").

---

[2] Defendants effectively concede that the Title VII analysis is applicable to FHA claims, Motion at 15. In addition, Defendants further concede the applicability of the Title VII analysis by erroneously describing the *McDonnell Douglas v. Green* case, 411 US 792 (1973), as an FHA case, when in fact it was a Title VII case. Motion at 13. While Defendants are correct that the Eleventh Circuit looks to Title VII case law to interpret the FHA, Defendants ignore the relevant case law cited herein applying *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–102 (2003), and the shift away from the *McDonnell Douglas* test in mixed motive discrimination cases.

The court in *Quigg* explained that the *McDonnell Douglas* three part test, relied upon by Defendants in their Motion, applies only to single motive claims, whereas the motivating factor analysis applies to mixed-motive claims. Under a single motive claim, also known as a pretext claim, the analysis applies whether the illegal bias "was the true [or sole] reason for the adverse action." *Quigg*, 814 F.3d at 1235. For a mixed motive claim, the plaintiff has to offer "evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) [a protected characteristic] was a motivating factor for the defendant's adverse employment action." *Id*. at 1239.

In the present action, Defendants have asserted that Ms. Fox was evicted for reasons other than her termination of the sexual relationship she endured with Defendant Dana Gaines, the property manager and agent of the property owner, his mother, Defendant Lucille Gaines. As demonstrated above in the Factual Background section (and in the Response Statement of Material Facts), the record is replete with evidence showing that Dana Gaines directly discriminated against Ms. Fox based upon her sex in multiple ways, and her gender was clearly a motivating factor in the harassment, retaliation and inference with her FHA rights that Dana Gaines caused after Ms. Fox terminated their sexual relationship. As explained just below, there is sufficient evidence on all four theories of liability, particularly considering all of the evidence in the light most favorable to Ms. Fox, with all reasonable inferences drawn in her favor, to deny the Motion.

### 1. *Quid Pro Quo Harassment Claim*

As pled in Paragraphs 1, 2, 3, 6, 17, 35, 36, 38 and 44 of the SAC, Ms. Fox was subjected to quid pro quo harassment by Dana Gaines, the property manager, agent, and son of the landlord, Lucille Gaines. As a district court within the Eleventh Circuit has explained in the FHA context: "quid pro quo harassment [is] where the terms and conditions of a rental, including continued

occupation, rent, and the provision of repairs, are conditioned upon compliance with the sexual demands of a landlord. The effect is that sexual activity has become part of the terms and conditions of the rental." *West v. DJ Mortg., LLC*, 271 F.Supp.3d 1336, 1359 (N.D. Ga. 2017) (internal citation omitted). Similarly, in *Noah v. Assor*, 379 F.Supp.3d 1284, 1291 (S.D. Fla. 2019), an FHA case Defendants cite in the Motion, a Southern District of Florida judge held: "Quid pro quo harassment is understood as 'an unwelcome request or demand to engage in conduct where submission to the request or demand, either explicitly or implicitly, is made a condition related to,' among others, the 'rental or availability of a dwelling' or 'the terms, conditions, or privileges of the sale or rental.'" citing 24 C.F.R. § 100.600(a)(1) (United States Housing and Urban Development ("USHUD" regulations).

      Here, as recited above and in Plaintiff's RSMF, the summary judgment evidence is replete with testimony from Ms. Fox, her ex-boyfriend Larry Dorsey, and her neighbor Charles Swartz, that Dana Gaines explicitly demanded sex as a condition of Ms. Fox's continued enjoyment of her tenant rights to rent at the apartment complex. Proof that continued sexual relations was a condition of rental of the apartment is that within days of Ms. Fox finally ending the relationship with him, Dana Gaines embarked on a swift campaign of posting notices on her door, including a notice for non-existing violations, another notice for non-payment of rent stating that zero rent was due, and he filed a bogus eviction action for non-payment against her. Under the *Quigg* mixed motive test above, Ms. Fox has set forth evidence sufficient to convince a jury that Dana Gaines took adverse action against her with bogus notices of violation and non-payment of rent, and her gender/sex was clearly a motivating factor for his adverse actions against her.

### 2. *Hostile Environment Claim*

As pled in paragraphs 17, 35, 36 and 45 of the SAC, Ms. Fox was subjected to a hostile environment by Dana Gaines's sexual advances toward her. As the Court in *Noah* further explained, in the FHA context, "'hostile environment harassment' is understood as 'unwelcome conduct that is sufficiently severe or pervasive as to interfere with: [t]he availability, sale, rental, or use or enjoyment of a dwelling; [or] the terms, conditions, or privileges of the sale or rental.'" *Noah*, 379 F.Supp.3d at 391 (citing 24 C.F.R. § 100.600(a) of USHUD regulations). Moreover, hostile environment harassment "does not require a change in the economic benefits, terms, or conditions of the dwelling," and it "can be written, verbal, or other conduct, and does not require physical contact." *Id.*, citing 24 C.F.R. § 100.600(b). Most importantly, *Noah* concluded that "To prove hostile environment harassment, the decision maker must look to the "totality of the circumstances," which includes but is not limited to, "the nature of the conduct, the context in which the incident(s) occurred, the severity, scope, frequency, duration, and location of the conduct, and the relationships of the persons involved." *Id.*, citing 24 C.F.R § 100.600(a)(2)(i)(A).

Although Defendants' Motion spends a lot of ink seeking to present Ms. Fox as a fully willing participant in the sexual relationship with Dana Gaines, the totality of the circumstances on a summary judgment standard should lead this Court to deny the Motion. Given the clear evidence of the overt sexual advances by an on-site property manager with power to evict Ms. Fox, and Ms. Fox's stated worries that she had little choice but to acquiesce to the situation created by Dana Gaines in order to keep herself and her minor child in the apartment, at a minimum there is sufficient evidence to create a genuine issue of material fact on the hostile environment claim.

#156639236_v1

### 3. *Retaliation Claim*

In Paragraphs 8, 10, 12, 17, 35, 37 and 38 of the SAC, Plaintiff has pled a retaliation claim under the FHA based upon her eviction by Dana Gaines, the agent of Lucille Gaines, following Ms. Fox's termination of the sexual relationship with Dana Gaines, and Ms. Fox's complaint about Dana Gaines continued pursuit of her after she ended the sexual relationship. In *Belcher v. Grand Rsrv. MGM, LLC*, 269 F. Supp. 3d 1219, 1243–44 (M.D. Ala. 2017), the Court recited the standard for an FHA retaliation claim: "To establish a prima facie case of retaliation, a plaintiff must show that (1) [s]he engaged in a protected activity; (2) the defendant subjected h[er] to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." See also Post Remand Order on Motion to Dismiss [ECF No. 65 in this case] at pp. 3-4.

All of the allegations recited by the Court to support the retaliation (and interference) claims at page 5 of the Post-Remand Order have now been proven by sufficient evidence to deny the Motion. Those facts recited by the Court with references to the RSMF included in red, follow:

> The SAC alleges that Ms. Fox ended her four-year sexual relationship with Mr. Gaines on March 30, 2018. RSMF, ¶¶ 8, 10. Three days later, Mr. Gaines sent Ms. Fox a clean-up notice describing several violations on the property. RSMF, ¶ 11 (notice had no basis in fact). Ms. Fox was traveling at the time, and when she returned, she found a three-day notice to vacate posted on her door. RSMF, ¶ 12. Three days after that, Ms. Fox paid her usual amount of rent (less than the full amount) and, because she was no longer performing sexual favors for Mr. Gaines, promised to pay the remainder of rent by April 14, 2018. RSMF, ¶¶ 12, 13, 15. By April 14, Ms. Fox tendered the remainder of the rent to Mr. Gaines (RSMF ¶ 16) but he posted another notice threatening to file an eviction proceeding against her. RSMF, ¶ 19. The same day, Ms. Fox notified Mr. Gaines's wife about their "sexual encounters" and asked her to tell Mr. Gaines to stop threatening her and to allow her to pay rent until she found another place to live. RSMF, ¶ 20. On April 22, Mr. Gaines gave Ms. Fox another three-day notice to vacate and surrender possession for failure to pay rent, despite noting that Ms. Fox owed zero dollars. RSMF, ¶ 38-39. Mr. Gaines filed an eviction action in court against Ms. Fox on May 1. RSMF ¶ 39.

Given this factual record, there can be little doubt that Ms. Fox engaged in the protected activity of terminating the sexual relationship between her and the property manager, Dana Gaines (a

10

#156639236_v1

relationship that itself supports the sexual harassment claims described above), to enjoy the full rights of a tenant to be free from such harassment and sexual discrimination. As to the second element, Dana Gaines subjected Ms. Fox to the adverse action of posting more than one bogus notices of violation and filing an eviction action against her for non-payment of rent, despite her having paid the rent in full in accordance with the course of dealing between the parties. Finally, as to the third element, the close temporal proximity of just days after exercising her protected activity right of ending the relationship on March 30, and then seeking the assistance of Dana Gaines's wife (who the record shows assisted with rent collection duties) to stop Dana Gaines's continued posting of notices of unfounded violations, shows the causal connection. See *Martin v. Brevard County Public Schools*, 543 F.3d 1261, 1268 (11th Cir. 2008) (temporal connection of termination while on FMLA leave enough to support claim); *Spakes v. Broward Cty. Sheriff's Off.*, No. 06-61471-CIV, 2007 WL 9653286, at *6 (S.D. Fla. Oct. 31, 2007) (where plaintiff was discharged four days after she submitted her request for FMLA leave, the Court found this period of time sufficiently short to create a material issue of fact as to a causal connection).

### 4. Interference Claim

In Paragraphs 8, 9 and 12 of the SAC, Plaintiff has pled an interference claim under the FHA, 42 U.S.C. § 3617, which is closely related to the retaliation claim. To state an interference claim under the FHA, the plaintiff must prove: "(1) that [she] exercised or enjoyed 'any right granted or protected by' Sections 3603-3606; (2) that the defendant's conduct constituted interference; and (3) a causal connection existed between the exercise or enjoyment of the right and the defendant's conduct." See Post-Remand Order at 4, citing *Moore v. Camden Prop. Tr.*, 816 F. App'x 324, 335 (11th Cir. 2020).

The same facts that support the retaliation claim described above also support the interference claim. Plaintiff exercised her rights under the FHA to be free from sexual/gender discrimination by ending the relationship with property manager Dana Gaines and then complaining about his continued pursuit of her to his wife. Dana Gaines then swiftly embarked upon a campaign to evict Ms. Fox as described in the Factual Background section, including the posting of bogus notices of violation and the filing of an eviction action against her despite all rent being paid. The same close temporal connection of a matter of days between the protected activity and the interference, again described in the prior section under retaliation, more than create a genuine issue of material fact that should lead this Court to deny the Motion.

### B.     If McDonnell Douglas Test Applies the Motion Should Still be Denied

If the Court concludes that FHA discrimination/retaliation/interference claims are subject to the three-part test articulated in *McDonnell Douglas Corp. v. Green*, then the Motion should still be denied. Under the same factual recitation and legal analysis from the prior section, Plaintiff has more than set forth a *prima facie* case on all four claims in this action, primarily the short temporal connection between her protected acts of ending the sexual relationship with the property manager and then complaining about the continued advances, and the swiftness of the posting of a notice of violation and three day failure to pay zero dollars owed in rent. *King v. McIntosh Sawran & Cartaya, P.A.*, No. 18-60286-CIV, 2018 WL 6179476, at *6 (S.D. Fla. Nov. 27, 2018). In *King*, the court noted that because Plaintiff "was fired while on leave, there is simply no gap of time" between her FMLA-protected conduct and the adverse employment action. *Id.* And because of this, "the timing between the two events suggests a causal relationship sufficient to establish a prima facie case of FMLA retaliation." *Id.* at *7. The court in *King* also noted that "at the prima facie stage, [c]lose temporal proximity between protected conduct and an adverse employment

12

action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Id*. at *3 (internal citation omitted). Because Ms. Fox has more than made out her *prima facie* case, the burden shifts to Defendants to articulate a legitimate reason.

    **1.** ***Defendants' Purported Non-Discriminatory Reasons for Eviction are Clearly a Pretext for the Discriminatory Acts of Defendants***

Defendants' Motion appears to set forth several easily rebutted pretextual reasons for Ms. Fox's eviction. See Motion at p. 17.

First, regarding the purported upset reaction of Jackie Gaines, Dana Gaines's wife, the summary judgment evidence shows that Jackie Gaines knew about the affair for about a year before speaking to Ms. Fox on April 14, 2018. RSMF, ¶¶ 20-23. Moreover, this reason is a clear pretext because Jackie Gaines herself testified in her deposition that the affair between Dana Gaines and Ms. Fox did not threaten her marriage. RSM, ¶ 20. The closely related argument that the units of Dana Gaines and Ms. Fox were located near each other fails for the same reasons. The evidence in the record creates at least an issue of fact regarding this purported non-discriminatory reason. Although, looking at this reason another way, it was the improper sexual relationship between Dana Gaines as a married property manager living in the complex with his wife and a tenant, Ms. Fox, thereby forbidding Defendants from asserting the natural fallout of Ms. Fox asserting her right to end the relationship, namely Jackie Gaines being upset, as a valid reason for eviction. In other words, the property manager's wife being upset because she learned that the property manager, her husband, pressured a tenant to have sex cannot be a legitimate reason to evict as it stems from a discriminatory basis. The attempt to argue that Ms. Fox was not evicted

because of the Dana Gaines' violations of the FHA but because Ms. Fox told his wife about the affair is simply pretext.[3]

Second, the purported reason for eviction of failure of Ms. Fox to pay rent is refuted by both the documentary evidence in this case and the deposition testimony. There is no dispute that rent was allowed to be paid in partial payments, and that this policy extends to all tenants. RSMF, ¶ 18. Thus, the fact that only right after Ms. Fox ends the sexual relationship with Dana Gaines does that policy no longer apply to Ms. Fox proves that this argument of non-payment of rent is pure pretext for discrimination. Moreover, the rent receipts attached to the Complaint, the notice of non-payment of rent with no rent balance owed, and an eviction complaint falsely implying rent was not paid, all make the non-payment of rent argument frivolous as a valid non-discriminatory basis for eviction.[4]

Third, regarding the actions of Larry Dorsey toward Dana Gaines, the incident complained of with Mr. Dorsey yelling outside Dana Gaines's apartment occurred about one year *after* Dorsey had moved out and was no longer living at the Rose Bush apartments and at least a few months *before the eviction*. Dorsey's actions that night were of his own volition and he went to the Rose Bush apartments on his own accord after Ms. Fox called him upset at Dana Gaines's continued harassment of her. Thus, the raising of this incident as a non-discriminatory reason for eviction is

---

[3] To the extent Jackie Gaines's affidavit is contradicted by her deposition testimony, the Court may disregard that affidavit under longstanding Eleventh Circuit precedent. See *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010) (citing *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.,* 736 F.2d 656 (11th Cir. 1984)).

[4] Again, to the extent Dana Gaines's affidavit is contradicted by his deposition testimony, the Court may disregarding that affidavit. See *supra* n.3. Several times during his depositions Dana Gaines pointed out that his interrogatory responses, prepared by his counsel, had to be corrected. See Dana Gaines deposition at pp. 39:15 to 39:24, 87:10 to 87:17, 104:20 to 105:4. Moreover, it is somewhat telling that Defendants submitted several depositions to the Court but not Dana or Jackie Gaines's depositions, which are attached to Plaintiff's Response Statement of Material Facts.

clearly a pretext -- either because Larry's actions toward Dana Gaines in 2018 cannot be attributed to Ms. Fox, or, because Larry's actions were as a result of Dana Gaines's retaliatory actions toward Ms. Fox and thus part of the discriminatory actions taken by Dana Gaines.  Under either interpretation, there is a sufficient dispute of fact as to the motivation of Dana Gaines causing the eviction of Plaintiff to defeat summary judgment.

### 2. *Close Temporal Connection Can Defeat Pretext*

Even without the above arguments as to why all of the purported non-discriminatory reasons were mere pretexts for the FHA violations by Dana and Lucille Gaines, a short temporal connection, by itself, could provide both a prima facie case and pretext under the facts of this case. In a discrimination case under the Family Medical Leave Act ("FMLA"), a similar anti-discrimination statute as the FHA, the Eleventh Circuit held that the short temporal connection of an employee being terminated while on FMLA leave is enough to support both the prima facie case and support pretext argument.  *Martin v. Brevard County Public Schools*, 543 F.3d 1261, 1268 (11th Cir. 2008).  Similarly, in another FMLA case in which an employee was discharged four days after submitting her request, the Court found this period of time sufficiently short to create a material issue of fact as to a causal connection.  *Spakes v. Broward Cty. Sheriff's Off.*, No. 06-61471-CIV, 2007 WL 9653286, at *6 (S.D. Fla. Oct. 31, 2007).

### C. DEFENDANTS' CITED CASES ARE NOT APPLICABLE OR SUPPORT PLAINTIFF'S ARGUMENTS

In their Motion, Defendants cite to a few cases from within the Eleventh Circuit on the disputed issues in this case.  Moreover, the two published decisions that are cited do not support Defendants' arguments.  For example, as noted previously in *Noah v. Assor*, 379 F.Supp.3d 1284 (S.D. Fla. 2019), the court mostly denied the landlord's motion to dismiss the FHA claims in a case similarly alleging sex harassment and gender discrimination in an apartment rental.  Without

15

a pinpoint cite it is difficult to state with certainty, but Plaintiff's counsel could not find support within *Noah v. Assor* for Defendants' cited proposition "that a landlord might well choose to replace a tenant who has evidenced an inability to meet the rental obligations with another tenant who has no such issues." See *Noah v. Assor*, 379 E.Supp.3d 1284 (S.D. Fla. 2019)." Motion at 13. While this proposition might seem intuitive, it is telling and instructive that Judge Moreno in *Noah* refused to dismiss all but one of the FHA claims in the case under similar circumstances as the present case. Moreover, such an argument is inapplicable to the facts of this case, since Ms. Fox in fact timely paid her rent under the course of dealing followed by the Rose Bush apartment complex management.

Similarly, the Defendants' reliance on *Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F.Supp.2d 1133 (2004) is also misplaced. Motion at 14. Again, without a pinpoint cite of quotation it is not clear what legal point is being asserted with this citation. However, *Lawrence* is clearly distinguishable, because the defendants in that case, a property manager and a homeowner's association, were alleged to have failed to stop a racist neighbor of the plaintiffs, and not affirmatively discriminated themselves against plaintiffs. Judge Huck held that "[a] failure to act does not rise to the level of the egregious overt conduct that has been held sufficient to state a claim under section 3617." *Lawrence*, 318 F.Supp.2d at 1144-45. In the present case, the property manager is the primary harassing actor violating the FHA.

### D. VICARIOUS LIABILITY OF LUCILLE GAINES

As this Court explained in its Post-Remand Order On Motions To Dismiss [ECF No. 65], under the FHA traditional principles of agency apply. See Order at pp. 7-10. Here, the undisputed facts show that Dana Gaines was the property manager for landlord Lucille Gaines, the owner of the Bush Rose Apartments. RSMF at ¶ 2. In that capacity as property manager, Dana Gaines

16

#156639236_v1

collected rent, posted notices to vacate, and notified tenants that an eviction action may be filed. RSMF at ¶ 42. As already recognized by this Court in its Order, these are the types of responsibilities that a landlord's agent generally performs. Therefore, the actions of Dana Gaines in violating the FHA retaliation and interference provisions through his discrimination of Ms. Fox on the basis of sex can be vicariously attributed to Lucille Gaines. The Motion should therefore be denied as to all remaining claims as to both Defendants.

## CONCLUSION

WHEREFORE, the Court should deny Defendants' Motion for Summary Judgment, and award Plaintiff any further relief the Court deems necessary.

Dated: April 15, 2022

Respectfully submitted,

HOLLAND & KNIGHT LLP
*Attorneys for Plaintiff Rita Fox*

By: /s/Philip E. Rothschild
Matthew Zimmerman
Florida Bar No. 11484
matthew.zimmerman@hklaw.com
HOLLAND & KNIGHT LLP
77 South Flagler Drive
Suite 1900, West Tower
West Palm Beach, Florida 33401
Telephone:   561-833-2000
Facsimile:   561-650-8399

Philip E. Rothschild
Florida Bar No. 0088536
phil.rothschild@hklaw.com
Courtney Oakes
Florida Bar No. 106553
courtney.oakes@hklaw.com
515 East Las Olas Boulevard,
12th Floor
Fort Lauderdale, FL 33301
Tel:   (954) 525-1000
Fax:   (954) 463-2030

                        Denita Jones
                        Fla. Bar No. 109494
                        Legal Aid Society of Palm Beach County, Inc.
                        423 Fern Street, Suite 200
                        West Palm Beach, FL 33401
                        Email:  djones@legalaidpbc.org

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 15th day of April, 2022, the foregoing motion was filed via the Court's CM/ECF filing system, which will serve it on the counsel of record in the Service List below via electronic mail.

                    By:  */s/Philip E. Rothschild*
                          Philip E. Rothschild
                          Florida Bar No. 0088536

## **SERVICE LIST**

Gary Brookmyer
Brookmyer, Hochman, Probst & Jonas, P.A.
Palm Beach Gardens, FL 33410
Telephone: 561-624-2110
Email: gary@brookmyerlaw.com
*Counsel for Defendants*

#156639236_v1